IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-100 |
| MANUEL ANTONIO NUNEZ-ORTEGA<br>a/k/a "Julio Ricardo Fratichelli-Hernandez" | :<br>: | |

## GUILTY PLEA MEMORANDUM

### I. INTRODUCTION

The defendant is charged by indictment with one count of illegal reentry in violation of 18 U.S.C. § 1326(a) and (b)(2), arising from his presence in the United States having been previously deported. Specifically, defendant, a native and citizen of the Dominican Republic, was deported from the United States on September 20, 2012, after having plead guilty to theft by unlawful taking. He was thereafter found in the United States, on or about December 6, 2016, without having obtained permission from the Attorney General to reapply for admission There is a written plea agreement between the parties, a copy of which is attached as Exhibit A. The guilty plea hearing is scheduled for May 8, 2017.

### II. ELEMENTS OF THE OFFENSE

Count One: Illegal Reentry, 8 U.S.C. § 1326(a), (b)(2)

Title 8, United States Code, Section 1326 (illegal reentry after deportation), provides in pertinent part:

(a) . . . any alien who —

(1) has been denied admission, excluded, deported or removed, and thereafter

> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission;. . . [is guilty of an offense against the United States].

To establish a violation of 8 U.S.C. § 1326(a) as alleged in the indictment, the government must prove the following elements beyond a reasonable doubt:[1]

1. The defendant is an alien;[2]

2. The defendant was deported or removed; and

3. The defendant thereafter entered, attempted to enter, or was found in the United States.

United States v. Ntreh, 142 F. App'x 106, 110 (3d Cir. 2005) (holding that to establish a violation of 8 U.S.C. § 1326(a), the government must prove: "(1) the defendant is an alien; (2) the defendant was deported or removed in accordance with a valid deportation order; and (3) the defendant has unlawfully reentered the United States.") (citing United States v. Torres, 383 F.3d

---

[1] Section 1326 is a general intent crime and the government need only prove that an alien's act of entering the United States was voluntary. Voluntariness and general intent to enter the country can be inferred from the alien's presence in the United States and need not be alleged in the indictment. See United States v. San Juan-Cruz, 314 F.3d 384, 390 (9th Cir. 2002) ("Voluntary entry need not be expressly pled in an indictment for a violation of 8 U.S.C. § 1326."); United States v. Berrios-Centeno, 250 F.3d 294, 299-300 (5th Cir. 2001) ("[G]eneral intent of the defendant to re-enter the United States, which is analogous to voluntary action by the defendant, 'may be inferred by the fact that a defendant was previously 'deported' . . . and subsequently 'found in' the United States,' without consent.").

[2] The term "alien" means any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3).

92, 95 (3d Cir. 2004); United States v. Dixon, 327 F.3d 257, 259 (3d Cir. 2003); and United States v. DeLeon-Rodriguez, 70 F.3d 764, 766 (3d Cir. 1995)).

### III.   MAXIMUM PENALTY

The statutory maximum sentence for a violation of 8 U.S.C. § 1326(a), when enhanced under subsection (b)(2) based on defendant's prior aggravated felony conviction, is 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.[3]

### IV.   FACTUAL BASIS

Were this case to go to trial, the United States would prove, beyond a reasonable doubt, facts including, but not limited to, the following:

According to his alien file, Defendant Manuel Antonio Nunez-Ortega is a native and citizen of the Dominican Republic. There is no evidence in his alien file that he is a citizen or national of the United States.

On November 16, 2011, defendant Nunez-Ortega was arrested by Allentown Police under the name "Julio Ricardo Fratichelli-Hernandez" during a vehicle stop for an outstanding identity theft warrant. Police found six United States Treasury checks totaling $30,817.00 on his person; the checks were made out to six different individuals residing in

---

[3] While a violation of 8 U.S.C. § 1326(a) (reentry after deportation) carries in a maximum sentence of two years, subsection (b)(2) provides for a 20-year maximum sentence enhancement when the prior removal was subsequent to a conviction for commission of an aggravated felony. Pursuant to 8 U.S.C. § 1101(a)(43)(G), an aggravated felony is defined as a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment is at least one year. Nunez-Ortega's 2012 conviction for Theft by Unlawful Taking (F3) in the Lehigh County Court of Common Pleas, for which he was sentenced to time-served to 24 months minus one day imprisonment, qualifies as an aggravated felony.

3

Allentown, Pennsylvania. Defendant Nunez-Ortega was Mirandized on scene and waived his rights. He admitted to using the name Julio Ricardo Fratichelli-Hernandez, a person unknown to him. He later admitted that his true name was Manuel Antonio Nunez-Ortega and that he was a citizen of the Dominican Republic not Puerto Rico as he had initially claimed.

On August 27, 2012, defendant Nunez-Ortega pled guilty to Theft by Unlawful Taking in the Lehigh County Court of Common Pleas and was sentenced to time-served to 24 months' minus one day imprisonment. Two days later, on August 29, 2012, Immigration and Customs Enforcement ("ICE") officials personally served defendant Nunez-Ortega with a Notice to Appear before an immigration judge to show cause why he should not be removed from the United States. On September 10, 2012, an immigration judge ordered that defendant Nunez-Ortega be removed from the United States to the Dominican Republic.

On September 20, 2012, defendant Nunez-Ortega was deported to the Dominican Republic via an ICE flight. Immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with his deportation. Defendant Nunez-Ortega's Form I-205 contains his name, signature, photograph, alien number, and fingerprint. The I-205 is also signed by the immigration officials who fingerprinted defendant Nunez-Ortega and witnessed his departure. Prior to his removal, immigration officials served defendant Nunez-Ortega with an I-294, Warning to Alien Ordered Removed or Deported, dated September 10, 2012, which warned him that he was prohibited from entering, attempting to enter or being in the United States for a period of ten years following his removal. The form also advised him that he was required to request and obtain permission from the Attorney General to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. § 1326 and

punishable by two to twenty years' imprisonment. The I-294 is signed by the immigration official, who served the warning.

On December 5, 2016, just over four years having passed since his deportation, defendant Nunez-Ortega was arrested by Whitehall Police and charged with Retail Theft. On December 6, 2016, ICE officials encountered defendant Nunez-Ortega at the Lehigh County Prison. A representative of the United States Customs and Immigration Service (USCIS) would testify that USCIS has no record of defendant submitting any application for permission for him to re-enter the United States. Finally, the government would offer the testimony of a Fingerprint Specialist from the Federal Bureau of Investigation that the fingerprint taken from the defendant by ICE officials subsequent to his most recent arrest matches the fingerprint on the I-205 from his prior removal.

The United States respectfully submits that this summary of evidence provides a factual basis for the guilty plea to the indictment.

Respectfully submitted,

LOUIS D. LAPPEN
Acting United States Attorney

*Sarah Damiani*
SARAH DAMIANI
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be served a true and correct copy of the Government's Guilty Plea Memorandum on this date, by e-mail, to the following:

Elizabeth L. Toplin, Esquire
Assistant Chief, Trial Unit
Federal Community Defender Office for the Eastern District of Pennsylvania
The Curtis Center Building
601 Walnut Street – Suite 540 West
Independence Square West
Philadelphia, PA 19106
Elizabeth_Toplin@fd.org

_____
SARAH DAMIANI
Assistant United States Attorney

DATE: May 1, 2017

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
                                :
                                :    CRIMINAL NO. 17-100
v.                              :
                                :
MANUEL ANTONIO NUNEZ-ORTEGA     :
    a/k/a "Julio Ricardo Fratichelli-
Hernandez"                      :

## GUILTY PLEA AGREEMENT

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

1. The defendant agrees to plead guilty to Count One of the indictment, charging him with Illegal Reentry in violation of Title 8, United States Code, Section 1326(a) and (b)(2). The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

2. At the time of sentencing, the government will:

    a. Move for a two level departure from the Sentencing Guidelines pursuant to USSG § 5K3.1 and the Early Disposition Program authorized for this district, if the defendant complies with the terms of this plea agreement.

    b. Make whatever sentencing recommendation as to fines, forfeiture, restitution, and other matters which the government deems appropriate.

    c.    Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

    d.    Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

    3.    The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum sentence: Count One, reentry after deportation, in violation of Title 8, United States Code, Section 1326(a) and (b)(2), up to 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

    4.    The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years per count of conviction. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

    5.    The defendant agrees to pay a fine as directed by the Court at sentencing.

    6.    The defendant agrees to pay a special assessment in the amount of $100 at such time as directed by the Court.

7. The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

8. Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) these stipulations are not binding upon either the Probation Office or the Court; (2) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed; and (3) the disposition contemplated by this plea agreement is pursuant to an early disposition ("Fast-Track") program authorized by the Attorney General of the United States and the United States Attorney for the Eastern District of Pennsylvania.

    a. The parties agree and stipulate that pursuant to USSG § 2L1.2(a) the defendant's base offense level is 8.

    b. The parties agree and stipulate that pursuant to USSG §§ 2L1.2(b)(2)(D) and 2L1.1(b)(3)(D), the defendant's offense level increases 8 levels because he has a prior aggravated felony conviction that occurred before his first order of removal and a felony conviction that occurred after his first order of removal.

    c. The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

    d. The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by

timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b).

    e.    The parties agree and stipulate that pursuant to the authorized Early Disposition Program in this district, the defendant is eligible for a 2-level downward departure.

    f.    The parties have no agreement as to the defendant's criminal history category. However, this agreement is conditioned on the defendant having less than 13 criminal history points. If the defendant has 13 or more criminal history points, or if the government discovers a conviction other than those disclosed to the defense prior to sentencing, the government shall have the right to withdraw from this agreement.

    g. The defendant understands and agrees that this guilty plea agreement contains all of the terms, conditions, and stipulations regarding sentencing. If the defendant requests (i) any downward departure or variance other than credit for time served in immigration custody following his arrest on December 5, 2016; or (ii) any other reduction or adjustment of sentence not specifically agreed to in writing by the parties, the government may withdraw from the plea agreement.

    9.    The defendant, who is not a citizen of the United States, understands that his guilty plea in this case will result in his being subject to immigration proceedings, and will likely result in him being removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the immigration consequences of his guilty plea. The defendant understands that the immigration consequences of this plea will be determined in a separate proceeding before the immigration authorities, and

that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences of his plea, even if the result is his removal from the United States. Therefore, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

10. If the defendant commits any federal, state, or local crime between the date of this agreement and his sentencing, or otherwise violates any other provision of this agreement, the government may declare a breach of the agreement, and may at its option: (a) prosecute the defendant for any federal crime including, but not limited to, perjury, obstruction of justice, and the substantive offenses arising from this investigation, based on and using any information provided by the defendant during the investigation and prosecution of the criminal case; (b) upon government motion, reinstate and try the defendant on any counts which were to be, or which had been, dismissed on the basis of this agreement; (c) be relieved of any obligations under this agreement regarding recommendations as to sentence; and (d) be relieved of any stipulations under the Sentencing Guidelines. Moreover, the defendant's previously entered guilty plea will stand and cannot be withdrawn by him. The decision shall be in the sole discretion of the government both whether to declare a breach, and regarding the remedy or remedies to seek. The defendant understands and agrees that the fact that the government has not asserted a breach of this agreement or enforced a remedy under this agreement will not bar the government from raising that breach or enforcing a remedy at a later time.

11. In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

    a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

    b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

        (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above;

        (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

        (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court;

        (4) that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel; and

If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

12. The defendant acknowledges that filing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government promises that it will not declare a breach of the plea agreement on this basis based on the mere filing of a notice of appeal, but may do so only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties acknowledge that the filing and pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

13. The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

14. The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

15. It is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

<div style="display:flex">

<div>

_____
MANUEL ANTONIO NUNEZ-ORTEGA
Defendant

_____
ELIZABETH L. TOPLIN
Counsel for Defendant

Date: 4/4/17

</div>

<div>

LOUIS D. LAPPEN
Acting United States Attorney

_____
PETER F. SCHENCK
Chief, Criminal Division
Assistant United States Attorney

_____
SARAH DAMIANI
Assistant United States Attorney

</div>

</div>

Attachment

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :

v.                               :           CRIMINAL NO. 17-100

MANUEL ANTONIO NUNEZ-ORTEGA      :
   a/k/a "Julio Ricardo Fratichelli-
Hernandez"                       :

## ACKNOWLEDGMENT OF RIGHTS

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1. I understand that I do not have to plead guilty.

2. I may plead not guilty and insist upon a trial.

3. At that trial, I understand

    a. that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

    b. that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

    c. that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

    d. that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

    e. that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

  f. that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

  g. that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

  h. that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

 4. I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

 5. I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

 6. I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

 7. Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

 8. I acknowledge that no one has promised me what sentence the Court will impose. I am aware and have discussed with my attorney that, at sentencing, the Court will calculate the Sentencing Guidelines range (including whether any departures apply), and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

 (1) the nature and circumstances of the offense and my personal history and characteristics;

 (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

_____
MANUEL ANTONIO NUNEZ-ORTEGA
Defendant

_____
ELIZABETH L. TOPLIN
Counsel for Defendant

Date: 4/4/17